**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CYNTHIA MAYBERRY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 08-CV-416 -GKF-PJC |
| INDEPENDENT SCHOOL DISTRICT | ) | |
| NO. 1 OF TULSA COUNTY, OKLAHOMA, | ) | |
| and MARTHA OVERTON, an individual. | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N   A N D   O R D E R

This matter comes before the court on defendants' motion to dismiss [Document No. 9]. For the reasons set forth below, defendants' motion is granted.

This Section 1983 civil rights suit arises from a decision by defendants to ban plaintiff from Carnegie Elementary School for a five-week period in the spring of 2007.  Plaintiff, a parent of a Carnegie student, alleges defendants' action violated her parental liberty interest and her Fourteenth Amendment rights to due process and equal protection.

Defendants seek dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Additionally, defendant Martha Overton, the principal of Carnegie, seeks dismissal on the grounds that she is entitled to qualified immunity with regard to plaintiff's claim against her in her individual capacity.

### Plaintiff's Allegations

Plaintiff is a parent of children enrolled in Carnegie Elementary School during the 2006-2007 school year. [Document No. 4, ¶6].  She was a parent volunteer at the school. [*Id.* ¶7].   On

April 13, 2007, Mayberry entered the Carnegie school building to drop off her children for school. [*Id.* ¶10].  While there, another parent, Marjorie Erdmann, asked her to check on Erdmann's daughter while Mayberry was in the building doing volunteer work. [*Id.* ¶10] While leaving the building, plaintiff glanced through the window of the door to the Erdmann girl's classroom. [*Id.* ¶11].  Later in the morning, plaintiff returned to the school, signed in on the volunteer sign-in sheet, and proceeded to the Erdmann girl's classroom. [*Id.* ¶12].  A teacher's aide outside the classroom nodded approval for her to enter. [*Id.*].  Plaintiff told the para-professional inside the classroom that she would like to check on the Erdmanns' daughter at Mrs. Erdmann's request. [*Id.*]   Plaintiff and the para-professional engaged the Erdmanns' daughter and several other children in conversation and then plaintiff left the classroom after an approximate two-minute visit. [*Id.*].  Plaintiff signed out and left and building. [*Id.*] The entire visit had lasted approximately five minutes, and plaintiff alleges that at no time during the visit was she given any indication that her actions were inappropriate or disruptive. [*Id.*] At lunchtime, plaintiff returned to the school and performed various activities related to her position as the coordinator of parent volunteers for the lunchroom and recess duty. [*Id.* ¶13].  While in the cafeteria, plaintiff was asked by Mrs. Erdmann to check on her daughter one final time that day and plaintiff hugged Mrs. Erdmann. [*Id.*].  Plaintiff alleges this conversation was observed by the school secretary and reported to defendant Overton. [*Id.*].  On her way out of the building, plaintiff looked in the window of the Erdmann girl's classroom, but did not stop because the door was closed. [*Id.*] At no time during the visit was plaintiff given any indication that her actions were inappropriate or disruptive in any way. [*Id.*]   Plaintiff's actions on that day did not in any way interfere with classes, study, or student or faculty safety. [*Id.* ¶14] She did not engage

2

in disruptive behavior, use loud or offensive language, did not threaten any teacher, employee, or student, did not damage school property, and did not disrupt the orderly operation of the school, classroom or other school facility. [*Id.* ¶15].

On the same day, defendant Overton sent plaintiff a letter banning her from the Carnegie campus until June 1, 2007, for violation of 21 Okla.Stat. §§1375-1376 and 70 Okla.Stat. §24-131 (Interfering with Peaceful Conduct of Activities).   [*Id.* ¶16]   Plaintiff appealed the ban in accordance with School District Regulation 7313-R. [*Id.* ¶21] The appeal hearing was held on April 23, 2007, before the School District Superintendent's designee, Steve Mayfield, Area Superintendent. [*Id.* ¶23].  During the hearing, plaintiff was allowed to read a written statement and Overton and others read written statements. [*Id.*]   Plaintiff was not allowed to question any of the witnesses. [*Id.*] A faxed statement which plaintiff was not allowed to see or rebut was accepted as evidence. [*Id.* ¶24].  After plaintiff was excused from the hearing, Mayfield allowed defendant Overton to remain in the hearing room with Mayfield for further discussion of the appeal pursuant to alleged "administrative privilege." [*Id.* ¶25] Plaintiff was not given an opportunity to hear or rebut whatever Overton said to Mayfield during the "administrative privilege" portion of the hearing.   [*Id.*]   By undated non-certified letter mailed May 10, 2007, after the School District's deadline of 10 days after the hearing, the School District, through the Superintendent's designee Mayfield, upheld and ratified the banning of Mayberry from Carnegie, although reducing the number of days the ban would be in effect. [*Id.* ¶26].

Because she was banned from Carnegie, she was unable to escort her children to school and could not meet them at school to pick them up or meet with her children's teachers, or to perform volunteer work at Carnegie. [*Id.* ¶30].

3

Plaintiff alleges the defendants, by banning her from the school her children attended, violated her Fourteenth Amendment substantive right to due process. [*Id.* ¶33].  She also alleges defendants violated her right to equal protection under the Fourteenth Amendment. [*Id.* ¶35]. She contends defendants, in banning her from Carnegie, treated her differently from others similarly situated. [*Id.* ¶35].  Plaintiff also alleges there was no rational basis for the different treatment, that defendants' decision was objectively unreasonable, that the treatment was motivated by illegitimate animus toward her, and that the decision was arbitrary, lacked a rational basis, and shocked the conscience. [*Id.* ¶¶36-39].   Plaintiff alleges defendants acted with deliberate indifference to her constitutional rights. [*Id.* ¶40].  Plaintiff contends the constitutional right violations are actionable under 42 U.S.C. §1983. [*Id.* ¶41].   She alleges she suffered deprivation of her liberty interest in the care, custody, and control of her children by being unable to come onto the Carnegie campus. [*Id.* ¶42].  She also claims she suffered inconvenience, distress, embarrassment, humiliation, anxiety, and other emotional distress as a result of the deprivation of her constitutional rights. [*Id.* ¶43].  She alleges defendant Overton's conduct was motivated by evil motive or intent, and banned plaintiff in reckless or callous indifference to plaintiff's federally protected rights. [*Id.* ¶¶44-45].  Plaintiff seeks compensatory and punitive damages. [*Id., Relief Requested,* ¶¶3-4].

### Analysis

Defendants urge dismissal under both Fed.R.Civ.Proc. 12(b)(1) and Fed.R.Civ.P. 12(b)(6).  Defendant Overton also seeks dismissal under the doctrine of qualified immunity. Federal courts are courts of limited jurisdiction, and are duty bound to ensure that they have jurisdiction over the matters before them.  *Cunningham v. Lenape Regional High District Board*

4

*of Education,* 492 F.Supp.2d 439, 446 (D.N.J. 2007), *citing* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* §3522.  A court must first determine whether subject matter jurisdiction exists before it can address a motion to dismiss for failure to state a claim upon which relief can be granted or any other legal issues.  *Id.*

### Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Defendants argue subject matter jurisdiction is lacking because the facts alleged by plaintiff fail to assert a "substantial federal claim."  In order to establish federal jurisdiction under 28 U.S.C. §1331, there must be a "substantial claim founded directly upon federal law." *Mescalero Apache Tribe v. Martinez,* 519 F.2d 479, 481 (10th Cir. 1975).   A claim is insubstantial if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."  *Hagans v. Lavine,* 415 U.S. 528, 538, 94 S.Ct. 1372 (1974).

A motion to dismiss for lack of subject matter jurisdiction may be based on either factual or legal grounds.  *Dry v. United States,* 235 F.3d 1249, 1252-53 (10th Cir. 2000).  A challenge to subject matter jurisdiction based upon legal grounds, as in this case,  is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Id.* at 253.

In *Bell Atlantic Corp. v. Twombly*, the court ruled that to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."___ U.S. ___,___, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  To survive a motion to dismiss, plaintiffs must nudge their claims "across the line from conceivable to plausible." *Id.*  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

5

support for *these* claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit Court of Appeals, applying *Twombly,* has held that the standard is whether, accepting the allegations as true, they establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Robbins*, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248.

The central issue in this case is whether defendants' decision to ban plaintiff from the elementary school for five weeks violated any constitutional right of plaintiff. Plaintiff claims the ban violated both a constitutionally protected parental liberty interest and her right to equal protection.

The Supreme Court, addressing the issue of parental rights with respect to public schools, has stated:

> Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint...By and large public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

*Epperson v. State of Ark.,* 393 U.S. 97, 104, 89 S.Ct. 266, 270 (1968).

The Tenth Circuit has acknowledged that parents have a constitutional right to direct their children's education. *Swanson v. Guthrie Independent School District No. I-L,* 135 F.3d 694, 699 (10th Cir. 1998). For example, courts have held that parents have a right to send their

6

children to private school, whether that school is religious or secular. *Id,* citing *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, (1925). "Numerous cases, however, have made it clear that this constitutional right is limited in scope." *Id.* Parents do *not,* for example, have a right to exempt their children from certain reading programs the parents find objectionable, or from a school's community-service requirement. *Id.* (citations omitted). Courts have also held that home-schooled children may be subjected, over their parents' objections, to standardized testing, and that states may require teachers at religiously-oriented private schools to be certified by the state. *Id.* (citations omitted). "The case law in this area establishes that parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." *Id.* (citations omitted).

Many courts have held that parents have no constitutional right to be on school premises. *See, i.e., Van Deelen v. Shawnee Mission Unified School District #512,* (D. Kan. 2004) *disapproved on other grounds, Van Deelen v. Johnson,* 497 F.3d 1151, 1157, n. 6 (10th Cir. 2007); *Lovern v. Edwards,* 190 F.3d 648 (4th Cir. 1999); *Cunningham v. Lenape Regional High District Board of Education,* 492 F.Supp.2d 439 (D.N.J. 2007); *Mitchell v. Beaumont Independent School District,* 2006 WL 2092585, *10 (E.D. Tex. 2006); *Mejia v. Holt Public Schools,* 2002 WL 1492205 (W.D. Mich. 2002); *Ryan v. Gresham,* 6 F.Supp.2d 595 (E.D. Tex. 1998).

Plaintiff argues these cases are distinguishable because they involve parents banned "after a pattern of threatening and abusive behavior." [Document No. 12, p. 10]  The court is not convinced this distinction is relevant.  In *Cunningham,* the court stated, "The Constitution does not leave the government powerless to protect against disruptive conduct, even speech, in public

7

places such as schools 'that require peace and quiet to carry out their functions.'" 492 F. Supp.2d at 448, *citing Gregory v. Chicago,* 349 U.S. 111, 118, 89 S.Ct. 946 (1969).  The court in *Cunningham* acknowledged the substance and tone of plaintiff's contacts with the school were in genuine dispute, but held the disputes were not material to the underlying assertion of a violation of plaintiff's constitutional rights.  *Id.*  In so ruling, the court stated: "As established, school officials are well within constitutional bounds in limiting access to school property where it is necessary to maintain tranquility." *Id.*  Similarly, in *Lovern,* the court stated, "School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." 190 F.3d at 655.   In *Goss v. Lopez,* 419 U.S. 565, 589-90, 95 S.Ct. 729 (1975), the court stated, "...this Court has explicitly recognized that school authorities must have broad discretionary authority in the daily operation of public schools.  This includes wide latitude with respect to maintaining discipline and good order."   In the educational context, courts–especially federal ones–are not the appropriate forum for resolving daily conflicts arising from the operation of school systems.  *Cunningham,* 492 F.Supp.2d at 450.

In *DeMarsh v. Payzant,* 550 F.Supp. 6, 9 (W.D. Okla. 1981), the court, in granting the defendant school board's motion to dismiss a suit alleging the board's denial of a transfer request violated a student's constitutional rights, stated, "A United States District Court is not a plenary reviewing body for a school board's administrative actions, and this Court therefore will not displace the judgment of the Defendants herein in denying the requested transfer with its own judgment."  Federal courts are proper forums for the resolution of serious and substantial claims.

8

*Mitchell* at *18.  Plaintiff can continue to pursue her complaint in the appropriate local or state forum; however, her claim can proceed no further here.  *See ,e.g., Cunningham,* 492 F.Supp.2d at 450.

Accepting plaintiff's allegation as true, and applying the substantiality doctrine, this court concludes plaintiff has no plausible claim for relief.  The record is replete with decisions by courts that parents do not have a constitutional right to be on school premises.  Thus, under *Hagans,* previous decisions foreclose the subject and leave no room for inference that the questions sought to be raised by plaintiff can be the subject of controversy.  415 U.S. at 538.

### Conclusion

The court concludes that plaintiff's complaint fails to raise a substantial federal question. Therefore, the complaint should be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

Having reached this conclusion, the court is without authority to rule on defendants' remaining arguments concerning dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and qualified immunity.

For the reasons set forth above, defendants' motion to dismiss [Document No. 9] is hereby GRANTED.

IT IS SO ORDERED this 21st day of November, 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

9